CHARLES S. DANIELS vs. THE EQUITABLE FIRE INSURANCE COMPANY.

A policy of insurance upon personal property in the shop of a mechanic contained the following provision:—"The assured has permission to use naphtha in his business, but fire or lights are not permitted in the building, except a small stove in the office." During the term of the policy a large stove was placed by the assured in a room of the building used as a drying room, and was thereafter used in connection with hot water pipes for warming the naphtha in tanks in the basement. A fire occurred soon after, caused by an explo-

sion of gas. The policy contained a provision that if the risk was increased the policy should become void. Held in a suit on the policy—

1. That the permission to use one stove definitely located carried with it a strong implication that the use of any other was prohibited.

2. That if it was not thus prohibited, yet if it increased the risk it was prohibited by the provision that the policy should become void by an increase of the risk.

3. That the question whether the risk was increased was one of fact for the jury.

4. That it was not enough for the assured to show that the fire was not caused by the second stove, as the defendants did not insure against the risk of two stoves.

5. That under the restrictions contained in the policy, the insurance of the property in a business in which naphtha was used did not by implication give the assured the right to use the ordinary means for carrying on that business without reference to the increase of risk.

6. That a provision in the policy for renewal, which contained the following clause—"but in case there shall have been any change in the risk not made known to the company at the time of renewal, the policy and renewal shall be void"—did not prevent the policy becoming void before renewal by increase of risk.

A verdict for the plaintiff set aside as being against the evidence upon the question of the increased risk.

ASSUMPSIT on a policy of insurance; brought to the City Court of the city of Hartford, and, by appeal, to the Superior Court in Hartford County. The insurance was in favor of E. M. Bray, and was for $500, "on his furniture, fixtures and tools, used by the assured in his business as renovator of furniture, clothing and carpets, and on the improvements to the building put in by him, all contained in the one-story brick building, tin roof, situate No. 10 Seyms Street, Hartford." The claim upon the policy was held by the plaintiff by assignment from Bray. The case was tried to the jury before *Hitchcock, J.*

The policy contained the following provision:—"The assured has permission to use naphtha in his business, but fire or lights are not permitted in the building, except a small stove in office."

It also contained the following conditions:—

"*First.* * * If the above-mentioned premises shall be occupied or used so as to increase the risk, or become vacant or unoccupied, without notice to and consent of this company in writing, or the risk be increased by the erection

or occupation of neighboring buildings, or by any means whatever within the control of the assured without the assent of this company indorsed hereon,       *       *       or if the assured shall store, use or vend     *     *     naphtha     *     * without written permission in this policy,       *       *       then this policy shall be void."

"*Eleventh.* This insurance (the risk not being changed) may be continued for such further time as shall be agreed on, provided the premium therefor is paid and indorsed on this policy, or a receipt given for the same; and it shall be considered as continued under the original representation, and for the original amounts and divisions, unless otherwise specified in writing; but in case there shall have been any change in the risk, either within itself or by neighboring buildings, not made known to the company by the assured at the time of renewal, this policy and renewal shall be void."

The term of the insurance was for one year from July 7th, 1877. The property insured was, with the building, totally destroyed by fire April 6th, 1878.

Upon the trial *Charles R. Howard,* the principal witness called by the plaintiff, testified substantially as follows:—

"I reside in Hartford. I had an interest in the naphtha works, and was there at the time of the fire. The building was about thirty by forty feet, one story; it fronted south on Seyms street; in the southeast corner was the office, about eight by eleven feet, the room next it was a store or dry-room about eighteen by twenty-two feet; behind both of these was a large room running the whole length of the building. In the office was a small cylinder stove, twelve inches diameter, which stood on the east side. The office had a door into the dry-room on the west side, and another door opened from this room into the back room. In the dry-room was another large stove, a cylinder, about eighteen inches through and three feet high, at the east end, near the partition dividing it from the office. This drying-room was used to dry garments in, to prepare them for delivery; also other articles. The door between the dry-room and the office was generally kept closed. The fire in the office was to heat the office; it was not used

in summer. The naphtha was contained in a large tank in
the cellar; it was heated from the large stove in the dry-room.
Hot water pipes went from a water-back in that, stove to a
boiler, and from that to the tank, and there warmed the
naphtha and made it operate. The naphtha ought to be
heated to about eighty degrees in winter; without heat it
would not operate; it got down to twenty-five or thirty
degrees and didn't work as well. This extra stove, pipes and
boiler were put in about the 1st of January, 1878. They
didn't work it much winters before that. The fire occurred
April 6th, 1878, Saturday afternoon, about four o'clock. It
was a damp day, and the gas of the naphtha stayed in the
rooms; we opened the doors to the outside, but it kept in,
There were articles drying in the drying-room; it got so full
of gas that we thought we had better get out of there. I
went into the office and shut the door behind me; it came
back on me before I could sit down, and the building lifted
up. I didn't get to a chair; I was apprehensive of danger.
I first saw the fire in the office, near the door leading from
the drying-room into the office, close by me at the top of the
office door. I was looking up and facing that door; I had
just turned towards the door. It was about four or five feet
from the office stove. There was a fire in the office stove; I
had put on more coal about twenty minutes before. In the
stove in the drying-room I had last put coal on the fire Friday
night. We didn't make it up there Saturdays, so as not to
have it last over Sunday. The door and dampers were all
shut in the drying-room stove. In the office stove the damp-
ers were open. Gas was all through the building and went
off like powder."

On cross-examination the witness said: "Fire lasts about
twelve or fourteen hours in the dry-room. I made a fire in
the dry-room stove about 6 P. M., Friday. I had put fresh
coal on the office stove about twenty minutes before I shut
the door, and had opened the drafts. I saw no flame in the
office except that in the door-way leading from the office into
the drying-room."

On the part of the defendants the principal evidence was
as follows:—

*Silas Chapman* testified:—"I live in Hartford. Was agent of the defendants when this policy was taken out; am not now. I issued this policy. I lived within five hundred feet of the building insured, and was familiar with it. I would not have insured the property at all if I had known there was to be such a stove in the dry-room. Open stoves in dry-rooms are dangerous. It increased the risk very materially, and made it uninsurable."

On cross-examination he said:—"I was familiar with the premises at the time the policy was issued, and knew that there was no stove there other than the office stove, and no arrangement for heating the naphtha. At that time the room west of the office was not used as a drying-room. The large room in the rear was then used for drying, and the room next the office for folding and pressing clothes."

*Leonard Dickinson* testified:—"I reside in Hartford. Am agent for the Ætna Fire Insurance Company, and have been for about twelve years. I am acquainted with insurance risks. I was familiar with these premises before this policy was taken. It increased the risk materially to put in this additional stove and heating apparatus, so much so that I would not have taken the risk with it there. It was uninsurable. Mr. Bray's father first came to me to insure it. 1 took him to Mr. Chapman. The greater the number of fires and lights in the building the greater would be the hazard; the pipes would heat the naphtha, and cause it to generate gas, and the more gas there was, the more liability to explosion and fire."

The defendants requested the judge to charge the jury as follows:

1st. If the jury find that at the time of the fire the assured had for use in the building another stove than that permitted in the policy, which had a fire in it at the time of the fire, without the consent of the company, the policy was thereby avoided, and the plaintiff cannot recover, whether the fire originated in such other stove or not.

2d. If the jury find that at the time of the fire the assured was so occupying or using the premises as to increase

Daniels *v.* Equitable Fire Ins. Cô.

the risk beyond that permitted by the policy without the consent of the company, then the plaintiff cannot recover, whether the fire was caused by the increase of risk or not.

The court did not so instruct the jury, but charged them as follows:—

"The defendants claim that the assured put in a stove and other apparatus, after the policy was issued, without the consent of the company, and that this materially increased the risk. Now if this was done, and materially increased the risk, it vitiated the policy. You are to decide whether putting in that additional stove and apparatus and using it, increased the risk. It did not of itself avoid the policy, unless it increased the risk. The policy makes no provision for its becoming void for such cause."

The jury returned a verdict for the plaintiff, and the defendants moved for a new trial for error in the charge of the court and on the ground that the verdict was against the evidence.

*C. E. Perkins,* in support of the motion.

1. As to the charge of the court. The policy provides in the printed part that naphtha should not be used in the building, and that if it was used without the written consent of the company the policy should become void. Naphtha is well known to be a most dangerous article to use, as the vapor arising from it explodes when mixed with air if it comes in contact with fire. In the written part of the policy, however, is the following clause:—"The insured has permission to use naphtha in his business, but fire or lights are not permitted in the building, except a small stove in office." It was admitted that the insured used naphtha in his business, and that the fire occurred from the use of it, and that besides the small stove in the office he had a large stove in the drying-room, where the naphtha gas would naturally be thickest. On these facts the defendants asked the court to charge that, if the jury found these facts so, the policy was avoided by the use of this additional stove; but the court charged that the putting in and using the additional stove did not avoid

the policy. But the original printed clause of the policy provided that the use of naphtha without the consent of the company should avoid the policy. The written consent only allowed the use of naphtha provided no other fire or lights were used except the office stove. Nothing can be more plain than that the meaning and construction of the whole taken together was that the consent was conditioned on the use of only one stove, and the use of other fire and lights would avoid the policy. The consent and the clause of prohibition are to be taken together. It is as if the policy had read "the use of naphtha, if any other fire or lights are used than a small stove in the office, shall avoid the policy." Any other construction would make this limited and guarded consent an absolute one, and the charge of the judge treats it exactly as if this provision about other fires had been left out altogether.

2. The verdict was clearly against the evidence, as to the increase of the risk by the use of the second stove. Two witnesses for the defendants declare the property to have been absolutely uninsurable with that stove, while the principal witness for the plaintiff testifies that the "gas was all through the building and went off like powder."

*G. G. Sill* and *J. H. Tallman*, with whom was *G. Case*, contra.

1. As to the charge of the court. It was expressed in writing in the policy that "the insured has permission to use naphtha in his business, but fire or lights are not permitted in the building, except a small stove in office." The insurance was taken as a hazardous risk at a large premium, and except for the written limitation in it, the printed policy, by the settled interpretation of the courts, permitted the conducting of the business in any reasonable manner necessary to its successful operation, even if such manner was prohibited by the printed conditions, and this because the company insured the naphtha laundry as a business, and therefore had insured against any use necessary and proper to its successful operation; and a written prohibition can have no force given it by construction against the assured beyond its express

terms.  For, unless the naphtha was brought to a tempera-
ture of about eighty degrees, it was inoperative for cleansing
purposes and the destruction of vermin, and, consequently,
the business could not be carried on in the winter, and so
was completely paralyzed by the prohibition of heat.  The
defendant below requested the court to charge the jury that
the mere putting in of any other than the office stove avoided
the policy.  The court correctly refused so to charge.  That
the use of a necessary stove in good faith, although not cov-
ered by the contract, renders the policy void and releases the
insurers from a loss from another cause falling strictly within
the risk insured against, (unless there is in the policy a
clause that such use shall render it void,) is a novelty in the
legal construction of a fire insurance policy, which is to be
construed strictly against the insurers who drew it.  Not a
reported case, nor a single legal writer has ventured to main-
tain such a doctrine; and, if sanctioned, it would render all
insurance insecure.  The company is fully protected if any
loss happens from a prohibited use, for the insured cannot
recover; and if the insurer desires to make such use itself
avoid the policy, he must so express it in his policy.

2.   The 11th section of the policy provides that " in case
there shall have been any change in the risk, either within
itself or by neighboring buildings, not made known to the
company by the insured at the time of renewal, this policy
and the renewal shall be void."   We submit that the fair and
legal construction of this clause is, that the policy was to
continue in force where there had been some increase of risk
to the time of renewal, as many risks are liable to such
change, and unless so continued the policy could not be
renewed, for a void policy could not have force by renewal.

3.   The verdict of the jury.  The jury found there was
no material increase of risk.  They had before them the
witnesses and could judge of their credibility, their knowl-
edge of the circumstances, their accuracy, and their interest
in the suit, and with all the lights which spoken testimony
and observation of the witness can convey and which the
printed record fails to disclose, they came to their conclusion.

Does the printed record convict them of error? As to the increase of danger from the use of the stove complained of, it was proved that the fire actually caught from the office stove, for, if otherwise, the plaintiff did not claim the right to recover. The business was a new one, commenced about July, 1877, the date of the policy. No raising of the temperature of the naphtha, and, of course, no stoves whatever, either in the office or elsewhere, were used or needed till the season advanced. Later, the office stove and then the stove to heat hot water, (which water was safe and harmless as affecting naphtha,) were put in to enable the insured to continue his business in the winter, which, as specified in the policy, was mainly in cleansing carpets and furniture, and destroying moths and vermin therein, while clothing was a mere fraction of the business. The carpets and other heavy articles, which would give out most gas when being dried, were hung in a remoter room for that purpose, while the drying room so called was really an ironing and folding-room, with a few light garments placed for convenient access about, and not capable of giving off any dangerous amount of gas. It was a room to iron, fold, and store goods ready to be delivered, and was a finishing and store-room properly and no other. This the jury saw and justly found no element of increased risk in it as claimed by the defendants.

CARPENTER, J. This is an action on a fire insurance policy. The cause was tried to the jury and the plaintiff had a verdict. The defendants move for a new trial for a misdirection and for a verdict against evidence. On one point in the case we think the verdict was clearly against the weight of evidence, and we will confine our attention mainly to that.

The property insured is described in the policy as follows: —"Furniture, fixtures and tools, used by the assured in his business as renovator of furniture, clothing and carpets, and on the improvements to the building put in by him." Then follows this clause:—"The assured has permission to use naphtha in his business, but fire or lights are not permited in the building, except a small stove in the office." At that

time there was no other stove in the building. The policy issued July 7th, 1877, for one year. About the first of January following a large stove was placed in a room used for a drying room, and was thereafter used in connection with hot water pipes for warming the naphtha in tanks in the basement. The fire occurred in April, and was caused by an explosion of gas.

The court charged the jury as follows:—"The defendants claim that the plaintiff put in a stove and other apparatus, after the policy was issued, without the consent of the company, and that this materially increased the risk. Now if this was done, and materially increased the risk, it vitiated the policy. You are to decide whether putting in that additional stove and apparatus and using it increased the risk. The question is whether there would be more likelihood of danger from two stoves, with the pipes for heating naphtha, than from one stove."

It was conceded that the additional stove was used in the manner and for the purpose stated, and that the use of naphtha caused an accumulation of highly inflammable gas in the room where the stove was. The defendants chose to insure property in a building in which there should be but one small stove, and that definitely located in as safe a place probably as there was in the building. By strong implication the use of any other stove was prohibited. We must presume that the defendants would have refused to insure with liberty to use two stoves in the manner they were used at the time of the fire. It will not do to say that they insured business carried on with naphtha and that therefore the insured had a right to use the ordinary means for carrying on that business. The conditions and manner of use were clearly defined and limited, to which he agreed, and he had no right to use means which involved a violation of his agreement. Nor was it necessary; for obviously the naphtha could have been heated by means of steam or hot water pipes from a fire at a safe distance.

But the plaintiff says that it is not expressed in the policy that the use of another stove shall make it void, and there-

fore that such use is not of itself a defense. It may be true that such use, irrespective of the increase of risk, will not have that effect; but the policy in another part expressly provides that if the risk is increased it shall be void; so that the real question was whether the additional stove increased the risk. The court correctly instructed the jury that if it did the plaintiff could not recover. The jury therefore must have found that the risk was not increased. There was no evidence to justify such a finding. The testimony the other way was clear and conclusive. In addition to the obvious danger from the use of such materials, two witnesses, familiar with the business of insurance, testified unqualifiedly that the use of the additional stove materially increased the risk and rendered the property uninsurable; and there was no conflicting evidence. It seems very clear that the jury must have disregarded the evidence.

The case is not met by the suggestion that there was evidence tending to show that the fire caught from the office stove. The difficulty reaches back of that. The defendants not only did not insure against the risk of two stoves, but virtually refused to insure at all if the premises were subjected to that additional risk. They had a right to refuse insurance in a case in which the question would be an open one, whether a loss was occasioned by a risk insured against or one that was not insured against. The difficulty of proving the origin of a fire, to say nothing of the inclination of juries to find against corporations, is a sufficient reason for the exercise of the right; and when a party has clearly exercised the right, as the defendants have in the present case, the court ought not to deprive him of the benefit of it by a strained interpretation of the policy.

Nor is the plaintiff's claim a tenable one that the policy continued in force during the term for which it issued, notwithstanding the increased risk, by virtue of the eleventh condition in the policy. That condition provides for a renewal of the policy at the expiration of the term, and then adds, "but in case there shall have been any change in the risk, either within itself or by neighboring buildings, not

made known to the company by the assured at the time of renewal, this policy and renewal shall be void."

It is obvious that this is not inconsistent with the first condition, which provides that the increased risk shall avoid the policy; nor was it intended to modify that condition; but was intended to extend it to the renewal in case one should happen to issue in ignorance of the increased risk.

Feeling constrained as we do to grant a new trial for the reason given above, it is unnecessary to consider the other questions raised by the motion.

A new trial is granted.

In this opinion the other judges concurred.